WO

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Jaime Silva-Acosta, | CIV 14-1347-PHX-DLR (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT COURT:

Petitioner Jose Jaime Silva-Acosta, who is confined in the Arizona State Prison Complex-Florence, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 11), and Petitioner filed a Reply (Doc. 12).

## BACKGROUND[1]

On March 9, 2009, Petitioner was indicted for molestation of a child, a class 2 felony and a "dangerous crime against children" (DCAC), and sexual abuse, a class 3 felony and a DCAC. (Exh. A.) At the time of the offense, Petitioner was on probation as an absconder. (Exh. F.)

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 11 – Respondents' Answer.

On the afternoon of March 6, 2009, 6-year-old Angie went out to play in the "little playground" in her back yard, which had "swings" and "monkey bars." (Exh. I at 54, 67-68.) Petitioner, who rented a room from Angie's family (Exh. I at 17; Exh. K at 9), was in the back yard, sitting on a tire (Exh. I at 17, 68-70; Exh. J at 9, 21).

While Angie was playing, Petitioner called her over. (Exh. I at 64; Exh. J at 22-23.) He touched her vagina with his hand, under her clothes, telling her "that was going to happen when [she had] a boyfriend." (Exh. I at 61-62; Exh. J at 23-24.) He also touched her breast with "his hand," and "lick[ed] [her] on [her] breast." (Exh. I at 62-63; Exh. J at 24-25.) He told her not to tell her mom. (Exh. I at 62.)

After Petitioner touched Angie, she ran inside, crying, and told her sister, S.L. (Exh. I at 63, 71-72; Exh. J at 24-26.) S.L. got their father, Jose, who was in the bathroom. (Id.) When Angie told Jose what had happened, she was still crying. (Exh. K at 14-15.) Jose became "very angry," and confronted Petitioner. (Id. at 15.) When Petitioner denied touching Angie, Jose said, "I believe my daughter over you." (Id. at 15-16.) He ordered Petitioner to leave. (Id. at 16.)

When Angie's mother, Michaela, returned home from work, Jose told her what had happened. (Exh. I at 16, 19-20.) By that time (11:30 p.m.), Angie was sleeping. (Id.) Angie told Michaela about it the following morning. (Id. at 19-22.)

Although Jose and Michaela were "angry" and in "shock," they did not think to call the police. (Id. at 23-24; Exh. K at 17-18, 28.) They eventually called because Michaela, who worked as a custodian at a local high school, asked one of the social workers "what could be done." (Exh. I at 16, 24; Exh. K at 33-34.) The social worker told Michaela to "go back home and call the police," and said, "if [Michaela] didn't call them that [the social worker] was going to … because that was a very serious crime." (Exh. K at 33-34.)

On March 12, 2009, Angie was interviewed at the Child Help Center by Detective Spear, a forensic interviewer. (Exh. J at 31-36; Exh. K at 41-42.) The following day, Angie was given a physical examination by Dr. Katherine Coffman. (Exh. I at 82 *et seq.*).

Petitioner was interviewed by Detective Daniel Romero of the Phoenix Police Department. (Exh. J at 62-80, 88-188; Exh. KK.) Petitioner admitted that he had been "playing" with Angie when she was trying to do "exercises" (sit ups) on an "inclined bench." (Exh. KK at 13, 36-37, 50-52, 82.) During further questioning:

- Petitioner claimed he was holding Angie's knees, and sitting her up. (Id. at 37, 51-52.) He said she told him to put his hand on her, so she could "bend at the waist." (Id. at 83, 87.)

- Petitioner agreed with questioner that he "overstepped or something," "[i]f that's what the little girl says," but then said, "I'm telling you that we were playing." (Id. at 62-63.)

- He admitted he "just rubbed her on the outside and the little girl got confused." (Id. at 63.)

- He admitted he was touching her "below the stomach," but denied he was touching her on her "privates." (Id. at 64-66.)

- He admitted he touched her "skin," and she would "bend," but denied that he "penetrate[ed] her." (Id. at 68.)

- He admitted that, while she was "bending," he was able to feel where it "splits," *i.e.,* the "plump area." (Id. at 70-71.) However, he distinguished the "plump area" from "down here where she's got her little thingy." (Id. at 73.)

- When asked if he went "too far and touch[ed] her," he said, "No. I tell you I didn't put my hand in." (Id. at 86.)

- At another point, he said: "All right, well, I admit it. I-I admit that. … I admit what the little girl says. Like the little girl says. If she felt that and all that … I respect her decision and everything." (Id. at 91.) However, shortly thereafter, he denied touching her "privates" and said, "No, not inside." (Id. at 92.)

- Later, when asked if he touched her "privates," he said: "Like I told you, well maybe I did-did-did, I mean I did touch her. … But I did not penetrate her. I did not penetrate or anything. I mean, like I said, I was putting my hand on her like this -- … that's-that's all. That's all. I did not penetrate her." (Id. at 97.)

- When asked where he put his hand on her, he said: "Like this, like I said, Where, the little plump area is. Where it starts. Like this. Just like this." (Id. at 97.) However, he denied touching her "inside the labia, … where it starts to split," stating: "No, no. There's her, little plump thing here. … The little plump area that they have here, like this. And like you said, here is where the thing goes down-- … --like this. This is where I had my-my hand. Like this." (Id. at 97-98.)

- When asked again whether he touched "the part where … it splits," Petitioner responded: "Well, yea, yeah. I mean, I noticed it, not where, not here, where it splits up, no. I noticed that it was here where her little thing begins, like this. That was

when-that's why I, I mean, I pulled my hand out. … The little girl kept on playing. And she saw that I didn't do it with-with malice." (Id. at 98.)

• Again, he admitted that, when she was "bending," "[He] did notice that he touched her there … like this," but claimed "I took my hand out and I told her, 'Hon, we're not playing anymore.'" (Id. at 99.) However, Petitioner again emphasized that the child wanted to continue playing. (Id. at 100-01.)

• When asked "what happened with her chest," Petitioner claimed that "she herself lifted up her blouse," because her "bra [for kids]" "rode up," and "she lifted it up to pull it down." (Id. at 101-02.) Then Petitioner said, "'Let's see, hon' [b] Like this. And [he] pulled it down for her." (Id. at 102.) He then changed his statement, saying he "adjusted it" for her from the back because "she didn't have it-it on right." (Id. at 102-03.) He later said, "I pulled it up like this." (Id. at 104, 108.) Still later, he admitted that "when [he] adjusted it," he was "able to touch her chest." (Id. at 105.)

At trial, Petitioner attempted to explain away his admissions (Exh. K at 69 et seq.), repeating that he was helping Angie do "sit ups," and that she put his hand underneath "where the belly button is" (Id. at 75-76). He claimed, "at no time" was his hand ever underneath her pants (Id. at 76-77), and he never touched her vagina over her pants (Id. at 78-79, 84). He also denied touching her breasts. (Id. at 79-80, 84.) When confronted with his admissions during his interview, Petitioner denied ever admitting that he touched Angie's vagina. (Id. at 95-96.)

The jury found Petitioner guilty of molestation of a child (Count 1) and sexual abuse of a child (Count 2), and in both instances, found the victim to be under the age of 15 years. (Exh. C; Exh. M at 3-7.) On May 14, 2010, the trial court sentenced Petitioner to 17 years' imprisonment on Count 1 (presumptive). (Exh. G; Exh. N at 18.) The trial court suspended imposition of sentence on Count 2, and placed Petitioner on probation for 10 years, to begin upon his discharge from prison from the sentence imposed on Count 1. (Id.)

On direct appeal, Petitioner raised the following claims:

1.    The trial court abused its discretion in denying Petitioner's Batson challenge.

2.    The trial court erred in admitting Angie's forensic interview.

(Exhs. P-R.) The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on December 22, 2011. (Exh. S.) The Arizona Supreme Court denied review on June 20, 2012. (Exh. X.)

On February 7, 2012, Petitioner filed a notice of post-conviction relief (PCR). (Exh. Y.) The superior court appointed PCR counsel on Petitioner's behalf. (Exh. Z.) On March 21, 2012, PCR counsel filed a notice of completion of post-conviction review, stating she was unable to discern any colorable claim to assert on Petitioner's behalf. (Exh. AA.)

Petitioner's *pro per* PCR petition, filed June 14, 2012, raised the following claims ("PCR claims"):

1.  The trial court erred in finding that the playing of the victim's forensic interview did not violate     DATED this 13th day of April, 2015. the hearsay rule.

2.  Playing the victim's forensic interview violated Petitioner's confrontation rights.

3.  The trial court erred in interpreting A.R.S. § 13-705 and sentencing Petitioner to consecutive sentences.

4.  The trial court erred in finding Petitioner's interview was not coerced.

5.  The trial court erred in denying Petitioner's Rule 20 motion.

6.  The trial court erred in telling Petitioner that if he was convicted he would be found in automatic violation of his probation.

7.  The victim was improperly coached by the prosecutor.

8.  Petitioner should be found innocent because one witness recanted at trial and was impeached with the witness's prior inconsistent statements and the victim's family waited 6 days to contact authorities.

9.  Trial counsel was ineffective in failing to move for a mistrial when the prosecutor asked the victim if she was frightened of Petitioner.

10. Trial counsel was ineffective in accepting the trial court's interpretation of A.R.S. § 13-705.

11. Appellate counsel was ineffective in not adequately arguing the <u>Batson</u> and forensic interview claims.

12. Appellate counsel was ineffective in failing to file a motion for reconsideration after Petitioner's convictions were affirmed.

13. First PCR counsel was ineffective in failing to raise any issues whatsoever except asking for a delayed appeal.

(Exhs. BB-DD.)

- 5 -

The superior court, through Hon. Janet E. Barton (the same judge who presided over Petitioner's trial) ruled that PCR claims 1-8 were precluded under Rule 32.2(a), Ariz. R. Crim. P., on the grounds that Petitioner either did not raise or could have raised the claims on appeal. The court further ruled that Petitioner failed to raise colorable claims for ineffective assistance of counsel ("IAC") in PCR claims 9-13 because:

- PCR claim 9: "According to relevant case law, Defendant's trial counsel was not ineffective for failing to seek a mistrial after the victim testified that she was afraid of the Defendant. *See State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981) (defendant not entitled to mistrial where victim testified that she was scared of the Defendant finding that given the nature of the acts committed there was little prejudice in victim testifying that she was afraid of the defendant)."

- PCR claim 10: "Nor was trial counsel ineffective for accepting the trial court's erroneous interpretation of A.R.S. § 13-705(M). In that regard, trial counsel did argue for concurrent sentences. Moreover, regardless of what counsel had said, this court would have run the probation term consecutive to the prison term. Indeed, in the four and ½ years this Court has been on a criminal assignment, the Court has never run a prison term and a probation term concurrent. In fact, the Court is hard pressed to understand what purpose a 10 year probation term would serve if it ran concurrent with a 17 year prison term."

- PCR claims 11-12: "Defendant's claim that appellate counsel was ineffective is also flawed. In that regard, Defendant fails to explain how appellate counsel's argument of the *Batson* issue was ineffective or what more appellate counsel could have done on that issue that he did not do. Moreover, Defendant's claim that appellate counsel was ineffective for not filing a motion for reconsideration of the Court of Appeals decision is simply not supported by the record as counsel did, indeed file such a motion."

- PCR claim 13: "Defendant's ineffective assistance of counsel claim regarding his PCR counsel is also unmeritorious. Ineffective assistance of PCR counsel is not a c[og]nizable Rule 32 claim. *See State v. Armstrong*, 176 Ariz. 470, 474-75, 862 P.2d 230, 234-35 (App. 1993) (As there is no constitutional right to an attorney in PCR proceedings, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.) (Citing *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 2566 (1991)."

(Exh. EE.)

Petitioner filed a petition for review by the Arizona Court of Appeals on January 10, 2013. (Exh. FF.) Although the petition for review overlapped Petitioner's PCR petition in some respects, Petitioner raised other claims for the first time, and made no reference to PCR claims 1-3, 5-6, 8, 10, 12-13. On May 12, 2014, the Arizona Court of

1    Appeals granted review and denied relief. (Exh. GG.) Petitioner did not file a petition for

2    review by the Arizona Supreme Court.

3        In the instant habeas petition, Petitioner raises six grounds for relief. In Ground

4    One, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were

5    violated because his trial and appellate counsel were ineffective in failing to argue that the

6    trial court erred in its interpretation of Arizona Revised Statutes section 13-705(m) during

7    Petitioner's sentencing. In Ground Two, Petitioner alleges that his Fifth, Sixth, and

8    Fourteenth Amendment rights were violated when his post-conviction counsel filed an

9    Anders brief. In Ground Three, Petitioner alleges that his Fifth, Sixth, and Fourteenth

10   Amendment rights were violated because the prosecution influenced the alleged victim to

11   alter her testimony. In Ground Four, Petitioner alleges that his Fourteenth Amendment

12   rights were violated when the Court threatened Petitioner that he would be in automatic

13   violation of his probation if he was convicted in the criminal case. In Ground Five,

14   Petitioner alleges that his Sixth and Fourteenth Amendment rights were violated because

15   his appellate counsel was ineffective in failing raise the grounds set forth in this Petition

16   in Petitioner's appeal. In Ground Six, Petitioner alleges that his Fourteenth Amendment

17   rights were violated when the trial court denied his Rule 20 motion.

18                                **DISCUSSION**

19       In their Answer, Respondents contend that Grounds Three through Six are

20   procedurally defaulted, and Grounds One and Two fail on the merits. As such,

21   Respondents request that the Court deny and dismiss Petitioner's habeas petition with

22   prejudice.

23   **A.    Exhaustion and Procedural Default**

24       A state prisoner must exhaust his remedies in state court before petitioning for a

25   writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v.

26   Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir.

27   1991). To properly exhaust state remedies, a petitioner must fairly present his claims to

28                                  - 7 -

1   the state's highest court in a procedurally appropriate manner. See O'Sullivan v.

2   Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his

3   claims to the Arizona Court of Appeals by properly pursuing them through the state's

4   direct appeal process or through appropriate post-conviction relief. See Swoopes v.

5   Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th

6   Cir. 1994).

7        Proper exhaustion requires a petitioner to have "fairly presented" to the state courts

8   the exact federal claim he raises on habeas by describing the operative facts and federal

9   legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270,

10   275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the

11   same claim he urges upon the federal courts."). A claim is only "fairly presented" to the

12   state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was

13   asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d

14   982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th

15   Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a

16   federal constitutional claim, his federal claim is unexhausted regardless of its similarity to

17   the issues raised in state court.").

18        A "general appeal to a constitutional guarantee," such as due process, is

19   insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v.

20   Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th

21   Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any

22   articulation of an underlying federal legal theory."). Similarly, a federal claim is not

23   exhausted merely because its factual basis was presented to the state courts on state law

24   grounds – a "mere similarity between a claim of state and federal error is insufficient to

25   establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404

26   U.S. at 275-77.

27

28

1   Even when a claim's federal basis is "self-evident," or the claim would have been

2   decided on the same considerations under state or federal law, a petitioner must still

3   present the federal claim to the state courts explicitly, "either by citing federal law or the

4   decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000)

5   (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541

6   U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a

7   petition or a brief ... that does not alert it to the presence of a federal claim" to discover

8   implicit federal claim).

9   Additionally, under the independent state grounds principle, a federal habeas court

10  generally may not review a claim if the state court's denial of relief rests upon an

11  independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32

12  (1991). The United States Supreme Court has explained:

13  In the habeas context, the application of the independent and adequate state
    ground doctrine is grounded in concerns of comity and federalism. Without

14  the rule, a federal district court would be able to do in habeas what this
    Court could not do on direct review; habeas would offer state prisoners

15  whose custody was supported by independent and adequate state grounds an
    end run around the limits of this Court's jurisdiction and a means to

16  undermine the State's interest in enforcing its laws.

17  Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for

18  presenting a valid claim deprives the state court of an opportunity to address the claim in

19  much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in

20  order to prevent a petitioner from subverting the exhaustion requirement by failing to

21  follow state procedures, a claim not presented to the state courts in a procedurally correct

22  manner is deemed procedurally defaulted, and is generally barred from habeas relief. See

23  id. at 731-32.

24  Claims may be procedurally barred from federal habeas review based upon a

25  variety of factual circumstances. If a state court expressly applied a procedural bar when a

26  petitioner attempted to raise the claim in state court, and that state procedural bar is both

27

28

1    "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas

2    court is barred. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991) ("When a state-law

3    default prevents the state court from reaching the merits of a federal claim, that claim can

4    ordinarily not be reviewed in federal court.") (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72,

5    87-88 (1977) and <u>Murray v. Carrier</u>, 477 U.S. 478, 485-492 (1986)).

6        Moreover, if a state court applies a procedural bar, but goes on to alternatively

7    address the merits of the federal claim, the claim is still barred from federal review. <u>See</u>

8    <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the

9    merits of a federal claim in an *alternative* holding. By its very definition, the adequate

10   and independent state ground doctrine requires the federal court to honor a state holding

11   that is a sufficient basis for the state court's judgment, even when the state court also

12   relies on federal law. ... In this way, a state court may reach a federal question without

13   sacrificing its interests in finality, federalism, and comity.") (citations omitted); <u>Bennett v.</u>

14   <u>Mueller</u>, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural

15   rule is not undermined where, as here, the state court simultaneously rejects the merits of

16   the claim.") (citing <u>Harris</u>, 489 U.S. at 264 n.10).

17       A procedural bar may also be applied to unexhausted claims where state

18   procedural rules make a return to state court futile. <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1

19   (claims are barred from habeas review when not first raised before state courts and those

20   courts "would now find the claims procedurally barred"); <u>Franklin v. Johnson</u>, 290 F.3d

21   1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a

22   federal claim 'applies only when a state court has been presented with the federal claim,'

23   _____

24       [2] A state procedural default rule is "independent" if it does not depend upon a federal
     constitutional ruling on the merits. <u>See</u> <u>Stewart v. Smith</u>, 536 U.S. 856, 860 (2002).

25

26       [3] A state procedural default rule is "adequate" if it is "strictly or regularly followed."
     <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988) (quoting <u>Hathorn v. Lovorn</u>, 457 U.S. 255,

27   262-53 (1982)).

28                                      - 10 -

1   but declined to reach the issue for procedural reasons, or 'if it is clear that the state court

2   would hold the claim procedurally barred.'") (quoting <u>Harris</u>, 489 U.S. at 263 n.9).

3        In Arizona, claims not previously presented to the state courts via either direct

4   appeal or collateral review are generally barred from federal review because an attempt to

5   return to state court to present them is futile unless the claims fit in a narrow category of

6   claims for which a successive petition is permitted. <u>See</u> Ariz.R.Crim.P. 32.1(d)-(h),

7   32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction

8   relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of

9   trial court's decision). Arizona courts have consistently applied Arizona's procedural

10  rules to bar further review of claims that were not raised on direct appeal or in prior Rule

11  32 post-conviction proceedings. <u>See, e.g., Stewart</u>, 536 U.S. at 860 (determinations made

12  under Arizona's procedural default rule are "independent" of federal law); <u>Smith v.</u>

13  <u>Stewart</u>, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's

14  procedural default rule is regularly followed ["adequate"] in several cases.") (citations

15  omitted), <u>reversed on other grounds, Stewart v. Smith</u>, 536 U.S. 856 (2002); <u>see</u> also

16  <u>Ortiz v. Stewart</u>, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not

17  "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure);

18  <u>State v. Mata</u>, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and

19  preclusion rules strictly applied in post-conviction proceedings).

20       The federal court will not consider the merits of a procedurally defaulted claim

21  unless a petitioner can demonstrate that a miscarriage of justice would result, or establish

22  cause for his noncompliance and actual prejudice. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 321

23  (1995); <u>Coleman</u>, 501 U.S. at 750-51; <u>Murray</u>, 477 U.S. at 495-96. Pursuant to the "cause

24  and prejudice" test, a petitioner must point to some external cause that prevented him

25  from following the procedural rules of the state court and fairly presenting his claim. "A

26  showing of cause must ordinarily turn on whether the prisoner can show that some

27  objective factor external to the defense impeded [the prisoner's] efforts to comply with

28

1   the State's procedural rule. Thus, cause is an external impediment such as government

2   interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio,

3   360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance

4   of the State's procedural rules or other forms of general inadvertence or lack of legal

5   training and a petitioner's mental condition do not constitute legally cognizable "cause"

6   for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of

7   justice," the Supreme Court has made clear that a fundamental miscarriage of justice

8   exists when a Constitutional violation has resulted in the conviction of one who is

9   actually innocent. See Murray, 477 U.S. at 495-96.

10      Ground Three claims that Petitioner's Fifth, Sixth, and Fourteenth Amendment

11   rights were violated because the prosecution influenced the alleged victim to alter her

12   testimony. (Docs. 1, 3.) Although Petitioner raised a similar claim in his state PCR

13   petition (Exh. BB [PCR claim 7]), Ground 3 is nonetheless procedurally barred because

14   the superior court denied the claim on adequate and independent state grounds, i.e., the

15   claim was precluded under Rule 32.2(a), Ariz. R. Crim. P., because Petitioner could have

16   but did not raise the claim on appeal (Exh. EE).

17      Ground Four claims that Petitioner's Fourteenth Amendment rights were violated

18   when the trial court threatened Petitioner that he would be in automatic violation of his

19   probation if he was convicted in the criminal case. (Docs. 1, 3.) Although Petitioner

20   raised a similar claim in his state PCR petition (Exh. BB [PCR claim 6]), Ground Four is

21   nonetheless procedurally barred because: (i) the superior court denied the claim on

22   adequate and independent state grounds, i.e., the claim was precluded under Rule 32.2(a),

23   Ariz. R. Crim. P., because Petitioner could have but did not raise the claim on appeal

24   (Exh. EE); and (ii) Petitioner did not raise this claim in his petition for review in the

25   Arizona Court of Appeals (Exh. FF).

26      Ground Five claims that Petitioner's Sixth and Fourteenth Amendment rights were

27   violated because his appellate counsel was ineffective in failing to raise "all the grounds

28                                    - 12 -

set forth in [Petitioner's federal petition]." (Docs. 1, 3.) This claim is procedurally barred because Petitioner did not assert it in his state PCR petition (Exh. BB) and/or his petition for review to the Arizona Court of Appeals (Exh. FF), and any return to state court would be futile.

Ground Six claims that Petitioner's Fourteenth Amendment rights were violated when the trial court denied his Rule 20 motion. (Docs. 1, 3.) Although Petitioner raised a similar claim in his state PCR petition (Exh. BB [PCR claim 5]), Ground Six is nonetheless procedurally barred because: (i) Petitioner did not fairly present PCR claim 5 as a federal claim to the superior court (Exh. EE); (ii) the superior court denied PCR claim 5 on adequate and independent state grounds, *i.e.*, the claim was precluded under Rule 32.2(a), Ariz. R. Crim. P., because Petitioner could have but did not raise the claim on appeal (Exh. EE); and (iii) Petitioner did not raise the claim in the Arizona Court of Appeals (Exh. FF).

Not only has Petitioner procedurally defaulted Grounds Three through Six, Petitioner has also not established grounds to excuse the procedural default by a showing of cause and prejudice, and he has not argued a fundamental miscarriage of justice. And, as stated previously, ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim.

Moreover, although "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 1315 (2012), Martinez does not apply to Grounds Three, Four, and Six as said claims do not allege ineffective assistance of counsel. As to Ground Five, to the extent Petitioner argues that ineffective assistance of counsel provides cause for his failure to properly exhaust his claim of ineffective assistance of appellate counsel, his argument fails. Under Martinez and Ha Van Nuyen v. Curry, 736 F.3d 1287, 1295 (9th Cir.2013) (holding that the

- 13 -

1   modified "cause" standard articulated in Martinez, "applies to all Sixth Amendment

2   ineffective assistance claims, both trial and appellate, that have been procedurally

3   defaulted by ineffective counsel in the initial-review state-court collateral proceeding"),

4   ineffective assistance of post-conviction counsel during an initial review collateral

5   proceeding can constitute cause to excuse a procedurally defaulted claim of ineffective

6   assistance of appellate counsel. Martinez, 132 S.Ct. at 1315; Nguyen, 736 F.3d at 1296.

7   To establish cause under Martinez, Petitioner must establish a substantial claim of

8   ineffective assistance of appellate counsel. See Trevino v. Thaler, ___ U.S. ___, 133 S.Ct.

9   1911, 1918 (2013).

10       In Ground Five, Petitioner argues that appellate counsel was ineffective for failing

11   to raise "all the grounds set forth in [Petitioner's federal petition]." The test outlined in

12   Strickland v. Washington, 466 U.S. 668 (1984) applies to claims of ineffective assistance

13   of appellate counsel. See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United

14   States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). Petitioner must show that his appellate

15   counsel's performance was objectively unreasonable in failing bring the claims on appeal.

16   See Smith v. Robbins, 528 U.S. 259, 285 (2000). "However, appellate counsel need not

17   advance every possible argument, even those that are non-frivolous, and should instead

18   concentrate his advocacy on winnowing out weaker arguments on appeal and focusing on

19   one central issue if possible, or at most on a few key issues." Davis v. Singletary, 853

20   F.Supp. 1492, 1549 (M.D. Fla. 1994) (internal quotations and citations omitted).

21       To succeed on a claim that appellate counsel was ineffective for failing to raise a

22   particular argument on appeal, the petitioner must establish that the omitted argument was

23   likely to be successful and therefore that he was prejudiced by its omission. See Tanner v.

24   McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007); Weaver v. Palmateer, 455 F.3d 958, 970

25   (9th Cir. 2006). The inquiry is not whether raising a particular issue on appeal would have

26   been frivolous, but whether there is a reasonable probability that raising the issue would

27   have led to the reversal of the petitioner's conviction. See Miller, 882 F.2d at 1434. If the

28

1   petitioner had only a remote chance of obtaining reversal based upon a specific issue,

2   neither element of Strickland is satisfied. See id.

3        Here, appellate counsel appears to have winnowed out weaker arguments and

4   focused specific issues. Specifically, appellate counsel argued (1) the trial court abused its

5   discretion in denying Petitioner's Batson challenge; and (2) the trial court erred in

6   admitting Angie's forensic interview. The process of "'winnowing out weaker arguments

7   on appeal and focusing on' those more likely to prevail, far from being evidence of

8   incompetence, is the hallmark of effective appellate advocacy." Smith, 477 U.S. at 536

9   (citing Jones v. Barnes, 463 U.S. 745, 751-752 (1983)). Here, appellate counsel's

10  decision to raise these two issues on direct appeal was not deficient performance, and, in

11  his two-sentence argument, Petitioner has not shown that there is a reasonable probability

12  that raising other issues on direct appeal would have led to a reversal of his convictions.

13  Accordingly, Petitioner has not raised a substantial claim of ineffective assistance of

14  appellate counsel.

15       Thus, Petitioner has not established a substantial claim of ineffective assistance of

16  appellate counsel and has not overcome the procedural bar to his claim of ineffective

17  assistance of appellate counsel asserted in Ground Five.

18  **B.**   **Merits**

19       Pursuant to the AEDPA[4], a federal court "shall not" grant habeas relief with

20  respect to "any claim that was adjudicated on the merits in State court proceedings"

21  unless the state court decision was (1) contrary to, or an unreasonable application of,

22  clearly established federal law as determined by the United States Supreme Court; or (2)

23  based on an unreasonable determination of the facts in light of the evidence presented in

24  the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362,

25  412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the

26  _____

27      [4] Antiterrorism and Effective Death Penalty Act of 1996.

28

1    AEDPA standard of review). "When applying these standards, the federal court should

2    review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

3         A state court's decision is "contrary to" clearly established precedent if (1) "the

4    state court applies a rule that contradicts the governing law set forth in [Supreme Court]

5    cases," or (2) "if the state court confronts a set of facts that are materially

6    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a

7    result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's

8    decision can involve an 'unreasonable application' of Federal law if it either 1) correctly

9    identifies the governing rule but then applies it to a new set of facts in a way that is

10   objectively unreasonable, or 2) extends or fails to extend a clearly established legal

11   principle to a new context in a way that is objectively unreasonable." Hernandez v. Small,

12   282 F.3d 1132, 1142 (9th Cir. 2002).

13        As applicable to Grounds One and Two, the two-prong test for establishing

14   ineffective assistance of counsel was established by the Supreme Court in Strickland. In

15   order to prevail on an ineffective assistance claim, a convicted defendant must show (1)

16   that counsel's representation fell below an objective standard of reasonableness, and (2)

17   that there is a reasonable probability that, but for counsel's unprofessional errors, the

18   result of the proceeding would have been different. See id. at 687-88.

19        Regarding the performance prong, a reviewing court engages a strong presumption

20   that counsel rendered adequate assistance, and exercised reasonable professional

21   judgment in making decisions. See id. at 690. "[A] fair assessment of attorney

22   performance requires that every effort be made to eliminate the distorting effects of

23   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

24   evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d

25   815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of

26   counsel's performance under Strickland is "extremely limited": "The test has nothing to

27   do with what the best lawyers would have done. Nor is the test even what most good

28                                          - 16 -

1    lawyers would have done. We ask only whether some reasonable lawyer at the trial could
2    have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon,
3    150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998).
4    Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts
5    of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at
6    690.

7         If the prisoner is able to satisfy the performance prong, he must also establish
8    prejudice. See id. at 691-92; see also Smith, 528 U.S. at 285 (burden is on defendant to
9    show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable
10   probability that, but for counsel's unprofessional errors, the result of the proceeding
11   would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a
12   probability sufficient to undermine confidence in the outcome." Id. A court need not
13   determine whether counsel's performance was deficient before examining whether
14   prejudice resulted from the alleged deficiencies. See Smith, 528 U.S. at 286 n.14. "If it is
15   easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
16   which we expect will often be so, that course should be followed." Id. (quoting
17   Strickland, 466 U.S. at 697).

18        In reviewing a state court's resolution of an ineffective assistance of counsel claim,
19   the Court considers whether the state court applied Strickland unreasonably:

20       For [a petitioner] to succeed [on an ineffective assistance of counsel claim],
         ... he must do more than show that he would have satisfied Strickland's test
21       if his claim were being analyzed in the first instance, because under §
         2254(d)(1), it is not enough to convince a federal habeas court that, in its
22       independent judgment, the state-court decision applied Strickland
         incorrectly.  Rather, he must show that the [state court] applied Strickland
23       to the facts of his case in an objectively unreasonable manner.

24   Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v.
25   Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application'
26   clause, a federal habeas court may not issue the writ simply because that court concludes
27   in its independent judgment that the state-court decision applied Strickland incorrectly.

28

- 17 -

Rather, it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.") (citations omitted).

### 1. Ground One

In Ground One, Petitioner claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated because his trial and appellate counsel were ineffective in failing to argue that the trial court erred in its interpretation of Arizona Revised Statutes section 13-705(M) during Petitioner's sentencing.[5]

The jury convicted Petitioner of (i) molestation of a child, a class 2 felony and a DCAC ("child molestation"); and (ii) sexual abuse of a minor, a class 3 felony and DCAC ("sexual abuse of a minor"). In discussing whether Petitioner's sentences should be concurrent or consecutive, defense counsel pointed the trial court to A.R.S. § 13-705(M), which provides as follows:

> The sentence imposed on a person by the court for a [DCAC] under subsection D of this section for child molestation[6] or sexual abuse pursuant to subsection F of this section[7] may be served concurrently with other sentences if the offense involved only one victim. The sentence imposed on a person for any other [DCAC] in the first or second degree shall be consecutive to any other sentence imposed on the person at any time, including child molestation and sexual abuse of the same victim.

---

[5] To the extent that this claim argues appellate counsel was ineffective, Petitioner's claim is procedurally barred because Petitioner did not assert it in his state PCR petition (Exh. BB) and/or his petition for review to the Arizona Court of Appeals (Exh. FF), and any return to state court would be futile. Petitioner has failed to establish, much less mention, any grounds to excuse the procedural default.

[6] Under A.R.S. § 13-705(D), an adult convicted of a DCAC in the first degree involving child molestation is sentenced to a "term of imprisonment" as follows: minimum = 10 years; presumptive = 17 years; maximum = 24 years.

[7] Under A.R.S. § 13-705(F), an adult convicted of a DCAC involving sexual abuse is sentenced to a "term of imprisonment" as follows: minimum = 2.5 years; presumptive = 5 years; maximum = 7.5 years.

(Exh. N at 11-12.) In discussing the foregoing, defense counsel and the trial court debated whether, when a defendant is convicted of child molestation and sexual abuse of a minor, the trial court has the discretion to impose a concurrent sentence:

> [MR. STEINFELD:] It's my interpretation of 13-705 subsection M that concurrency is still within the discretion of the Court. However, if the Court does not believe that it's within its discretion or simply wishes to exercise discretion in a certain fashion, I would then recommend a ten-year term on count 1, Your Honor, followed by probation.
> . . .
>
> THE COURT: There – Because the statute seems to say that if the other crime is a [DCAC] in the first or second degree, then it shall be consecutive to any other sentence imposed.
>
> MR. STEINFELD: If I remember correctly, and I was looking at this a couple days ago, Your Honor. It actually carved out an exception for child molest and sexual abuse if the victim is the same. If my recollection is correct.
> . . .
>
> THE COURT: Well, what the statute says is the sentence imposed on a person by the Court for a [DCAC] under subsection D of this section, which is molestation of a child, may be served concurrently with other sentences if the offense involved only one victim. And then it says the sentence imposed on a person for any other DCAC in the first or second degree shall be consecutive to any other sentence imposed on the person at any time, including child molestation and sexual abuse of the same victim.
>
> So, that language causes the Court to conclude that the other crime of over and above molestation of a child is the sexual abuse of a child, is a [DCAC] in the first or second degree, then the sentences have to be consecutive.

(Exh. N at 10-11.)

Although the trial court ultimately appeared to reject defense counsel's interpretation that § 13-705(M) gave the trial court the discretion to impose concurrent sentences, none of this ultimately mattered in Petitioner's case. After sentencing Petitioner to a term of imprisonment for child molestation under subsection D of § 13-705, the trial court "suspend[ed] imposition of sentence" for Petitioner's conviction of sexual abuse of a minor under subsection F, and placed Petitioner on probation for 10 years, as authorized by A.R.S. § 13-902(E).

Initially, the Court notes that in arguing that counsel erred for failing to challenge the court's interpretation of A.R.S. § 13-705(M), Petitioner fails to acknowledge the fact that counsel did, in fact, challenge the court's interpretation of § 13-705(M) and argued the very same interpretation of § 13-705(M) that Petitioner now urges, *i.e.*, that, under § 13-705(M), "concurrency is still within the discretion of the court," and that the mandatory nature of the statute "carved out an exception for child molest and sexual abuse if the victim is the same." (Exh. N at 10-11.)

Alternatively, even if counsel was deemed deficient under the above facts, Petitioner cannot establish prejudice. Here, Petitioner's sentence for sexual abuse of a minor under § 13-705(F) was "suspended" and he received a term of "probation" under A.R.S. § 13-902(E). While it may be theoretically possible to impose a 10-year term of probation "concurrently" with a 17-year prison sentence, the result is nonsensical. The Maricopa County Probation Department cannot supervise a defendant imprisoned in the Arizona Department of Corrections and the defendant cannot comply with the terms of probation while he is in prison. As explained by the trial court in rejecting Petitioner's PCR:

> [R]egardless of what counsel had said, this court would have run the probation term consecutive to the prison term. Indeed, in the four and ½ years this Court has been on a criminal assignment, the Court has never run a prison term and a probation term concurrent. In fact, the Court is hard pressed to understand what purpose a 10 year probation term would serve if it ran concurrent with a 17 year prison term.

(Exh. EE at PCR claim 10.)

Accordingly, the Court finds that Petitioner has failed to demonstrate deficient performance or resulting prejudice and, as such, the trial court's rejection of this claim was neither contrary to, nor an unreasonable application of, Strickland.

\\\
\\\
\\\

- 20 -

1

### 2.   Ground Two

2      In Ground Two, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment

3 rights were violated when his PCR counsel filed an Anders brief.

4      The Court finds that Petitioner's claim is conclusory – merely asserting that

5 appellate counsel was ineffective for filing an "Anders type brief." Petitioner fails to

6 describe how appellate counsel's allegedly deficient performance prejudiced him.

7 Specifically, Petitioner has not shown that, but for appellate counsel's alleged ineffective

8 assistance, there is a reasonable probability that he would have prevailed on appeal.

9 Moreover, Petitioner has not shown that the state court's rejection of his claim of

10 ineffective assistance of appellate counsel was contrary to, or was based on an

11 unreasonable application of, Strickland.

12                              **CONCLUSION**

13      Having determined that Grounds Three through Six are procedurally defaulted,

14 and Grounds One and Two fail on the merits, the Court will recommend that Petitioner's

15 Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

16      **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of

17 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED**

18 **WITH PREJUDICE**.

19      **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

20 leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not

21 made a substantial showing of the denial of a constitutional right and because the

22 dismissal of the Petition is justified by a plain procedural bar and jurists of reason would

23 not find the procedural ruling debatable.

24      This recommendation is not an order that is immediately appealable to the Ninth

25 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

26 Appellate Procedure, should not be filed until entry of the district court's judgment. The

27 parties shall have fourteen days from the date of service of a copy of this recommendation

28

within which to file specific written objections with the Court. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. <u>See</u> Rule 72, Federal Rules of Civil Procedure.

DATED this 13th day of April, 2015.

_Michelle H. Burns_

Michelle H. Burns
United States Magistrate Judge

- 22 -